✓ FILED ___ ENTERED
___ LOGGED ___ RECEIVED

11:25 am, Jan 04 202

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ Deputy

Case 1:20-mj-02710-TMD   Document 3   Filed 01/04/21   Page 1 of 14

1:20-mj-2710 TMD

# AFFIDAVIT IN SUPPORT OF
# APPLICATION FOR SEARCH WARRANT

I, Richard Gaylord, a Special Agent with Federal Bureau of Investigation ("FBI"), Washington Field Office, being duly sworn, depose and declare the following:

## INTRODUCTION

1. I makes this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the search of:

   a. Xiaomi cell phone with clear case (blue) with SIM card; model M1904F3BG, SN: SIM Card: Lucky Mobile 89302610105004215532l;

   b. Apple iPad model A1673, FCC ID: BCGA1673, S/N: DMPT24NPH1MJ;

   c. TomTom navigation device GPS Unit Serial #: BL109A90577; and

   d. Samsung 128 EVO Plus Micro SD card MB-MC1286GVGOANFW-T,

(collectively, the "**TARGET ELECTRONIC DEVICES**"), further described in Attachment A, for the things described in Attachment B. The **TARGET ELECTRONIC DEVICES** are currently in law enforcement custody at a secure facility located in Frederick County, Maryland.

2. I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7), that is, I am an agent of the FBI empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516.

3. I am a Special Agent with the FBI and have been so employed since June 2004. I am presently assigned to the Washington Field Office, where I am responsible for conducting criminal investigations and national security investigations involving the procurement, production, attempted and/or actual use of weapons of mass destruction; to include chemical, biological, radiological, nuclear or explosive (CBRNE) materials. Prior to my appointment with the FBI, I was employed as a laboratory technician in a chemical surety and biodefense laboratory.

4. I have been the primary, secondary, and/or tertiary agent on numerous investigations involving the development, acquisition, threatened or actual use of CBRNE materials to include bomb threats. Additionally, I have received training in responding to and investigating matters involving CBRNE materials or hoaxes. Through this training and experience, I have become familiar with the methods and techniques used by individuals to promote and facilitate unlawful activity, including but not limited to the use of electronic devices to communicate threats to individuals or store information regarding threats or planned actions to injure individuals. The following is based on oral and written reports by me and other law enforcement agents, surveillance, subpoenaed and public records, database checks, phone analysis, and other such investigative findings.

5. Because this affidavit is being prepared for the limited purpose of securing a search warrant, which is described in detail below, I have not set forth all facts known to me about this investigation. Rather, the facts I believe are necessary to establish a probable cause finding for the issuance of the requested warrants are included. However, I have not omitted any fact which might tend to defeat a finding of probable cause.

6. I respectfully submit that probable cause exists to believe that the **TARGET ELECTRONIC DEVICES**, as described in Attachment A, contain evidence, and are themselves instrumentalities, of criminal conduct committed by PASCALE CECILE VERONIQUE FERRIER ("FERRIER") and others known and unknown. Specifically, I submit that there is probable cause to believe that there is presently found within the **TARGET ELECTRONIC DEVICES**, evidence, fruits, and instrumentalities of violations of 18 U.S.C. Section 871 (Threats against the President), 18 U.S.C. Section 875(c) (Interstate Threats), 18 U.S.C. Section 175

(Prohibitions with respect to Biological Weapons), and related offenses (hereinafter, the "Target Offenses").

## PROBABLE CAUSE

7. On September 18, 2020, at approximately 9:00 a.m., the United States Secret Service ("USSS") notified the FBI Washington Field Office of a letter addressed to "Donald J Trump, The White House, 1600 Pennsylvania Avenue NW, Washington DC 20500 USA." This letter was postmarked from Canada and traveled interstate via the U.S. Postal Service and arrived at the White House Mail Sorting Facility in Washington, D.C. Review of the letter revealed it contained a white, powdery material and stated the following:

> …I found a new name for you: "The Ugly Tyrant Clown" I hope you like it. You ruin USA and lead them to disaster. I have US cousins, then I don't want the next 4 years with you as president. Give up and remove your application for this election. So I made a "Special Gift" for you to make a decision. This gift is in this letter. If it doesn't work, I'll find better recipe for another poison, or I might use my gun when I'll be able to come. Enjoy! FREE REBEL SPIRIT.

8. Based upon my training and experience, I know ricin to be an extremely toxic plant protein derived from seeds of the castor bean plant (ricinus communus). Ricin causes toxicity by inhibiting the formation of proteins in the exposed individual. The material found in the letter was field-tested by USSS personnel and tested positive for ricin. This presumptive positive field-test result was confirmed via extensive laboratory testing by the National Bioforensic Analysis Center ("NBFAC") in Frederick, Maryland, which found that the substance tested positive for ricin toxin.

9. While submitting the letter for forensic examination, the Washington Field Office was informed of the existence of six similar letters under investigation by FBI field offices in Texas. Those letters were received on September 15-16, 2020, and also had cancellation stamps

indicating mailing from Canada, contained a powdery substance, and were addressed to individuals working at penitentiaries and detention centers in Texas. The letters contained similar language to the letter sent to the President and were addressed to individuals affiliated with facilities at which FERRIER had been housed while incarcerated in Texas in 2019. Each of the letters contained the statement referencing "if it doesn't work I will find a better recipe" and all contained similar powder to the material found in the letter received at the White House Mail Sorting Facility in Washington, D.C.

10. Subsequent investigation of individuals with Canadian connections recently arrested and incarcerated in the FBI San Antonio area of responsibility revealed an individual by the name of PASCALE FERRIER who was arrested by Mission Police Department (Mission, Texas) on March 13, 2019, for weapons possession and was transferred into Immigration and Customs Enforcement custody.

11. A comparison of the letters received in San Antonio/Houston and Washington, D.C. showed multiple similarities. Further investigation of the letters revealed enough similarities between the letters to conclude the Texas and Washington, D.C. letters were sent by the same individual. Similarities included a signature block of "FREE REBEL SPIRIT" and matching language in each letter similar to "special gift for you," and "if it doesn't work I will find a better recipe for another poison or I might use my gun when I'll be able to come" in some of the San Antonio letters and the letter in Washington, D.C. Forensic examinations conducted at the NBFAC of all letters received in Texas and Washington, D.C., revealed latent fingerprints on at least four (4) of the letters recovered in San Antonio. Manual examinations of the recovered fingerprints revealed a match to FERRIER's fingerprints in FBI databases. Investigation of FERRIER's social media platforms revealed Twitter postings on or about September 9, 2020,

which referenced "#killTrump" and discussed wording such as "Ugly Clown Tyrant" (which is nearly the same wording used in the letter sent to the President). Investigations of these postings and 2703d returns from Twitter revealed the registration email address as Google email address Pascale.Ferrier@gmail.com.

12. On September 20, 2020, FERRIER drove a white 2008 Honda Fit (the "car") from Canada to the Peace Bridge border crossing in Buffalo, New York. FERRIER was the only occupant of the car, which was registered in her name. Prior to reaching the entry point, FERRIER exited the car and was detained by U.S. Customs and Border Patrol ("CBP") officers. FERRIER made statements to CBP officers referencing "being wanted by the FBI for the ricin letters," and was found to be in possession of a loaded firearm in her waistband, as well as a knife. A black backpack inside the car contained approximately 294 rounds of ammunition, a baton, pepper spray, and a stun gun.

13. Canadian law enforcement authorities conducted a lawful search of FERRIER's residence in Canada, and, among other relevant items, lab results revealed the presence of ricin in the residence.

14. On or about September 19, 2020, the FBI was notified of additional letters that had been received in Texas. The letters were sent to the warden of the Brooks County Detention Center as well as the Sherriff of Brooks County, TX. Ferrier was detained in the Brooks County Detention Center in 2019. The two letters also contained mention of a "Special Gift" and phrasing similar to "If it doesn't work, I'll find better recipe for another poison, or I might use my gun when I'll be able to come." Enjoy!" Both of the additional letters were signed "FREE REBEL SPIRIT."

15. Physical evidence was seized from FERRIER when she was placed under arrest. This included, among other things: (a) a Xiaomi cellular telephone (Model M1904F3BG) with Lucky

Mobile SIM Card 89302610105004215532; and (b) an Apple tablet (Model A1673) bearing Serial Number DMPT24NPH1MJ.  Physical evidence was also subsequently seized from FERRIER's car during a lawful search.  This included, among other things: (c) a TomTom navigation device GPS unit bearing Serial Number BL109A90577; and (d) a Samsung 128 EVO Plus Micro SD card (MB-MC1286GVGOANFW-T) removed by law enforcement from a camera mounted inside the car.  These four items are collectively the **TARGET ELECTRONIC DEVICES**.

16. Based on my training and experience, each of the **TARGET ELECTRONIC DEVICES** will contain evidence of the crimes under investigation, as set forth in Attachment B. The Xiaomi cellular telephone and the Apple tablet will include, among other things, records of communications, purchases, internet searches, notes and plans that will provide relevant evidence of, and related to, FERRIER's threatening communications and acquisition and use of ricin.  The TomTom navigation device will include, among other things, relevant evidence of the route traveled by FERRIER on her way to the Peace Bridge, prior locations she travelled that may have included mailing facilities and other locations useful to the possession or distribution of ricin, and future travel plans that were thwarted when FERRIER was placed under arrest.  And the Samsung Micro SD card taken from the dashboard camera will include evidence of, among other things, travel taken by FERRIER before and leading up to her apprehension at the Peace Bridge, potentially including video footage of FERRIER's interactions with CBP officers at the Peace Bridge.

17. The **TARGET ELECTRONIC DEVICES** are presently located at NBFAC in the District of Maryland.

## **ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

18.     Based on my knowledge, training, and experience; I know that electronic devices can store information for long periods of time. I also know that digital devices such as the **TARGET ELECTRONIC DEVICES** may be attached or installed to almost any other device, including any other computers to transfer data. I also know that data, including files and images can be transferred from other devices such as computers and other hard drives, including the **TARGET ELECTRONIC DEVICES**.

19.     I am also aware that some of the **TARGET ELECTRONIC DEVICES** such as cellular telephones or tablets are commonly connected to the internet and access social media websites such as Twitter.  In addition to accessing social media websites, **TARGET ELECTRONIC DEVICES** may be used to conduct searches of information which assisted in the commission of the **TARGET OFFENSES**.

20.     As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the electronic devices were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the electronic devices that are the subject of this warrant because:

> a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, transferred to another device and show a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).
>
> b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.
>
> c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw

conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on an electronic device is evidence may depend on other information stored on the electronic device and the application of knowledge about how an electronic device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

f. I know that when an individual uses an electronic device, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

21. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the electronic devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

## CONCLUSION

22. I submit that this Affidavit supports probable cause for a warrant to search the **TARGET ELECTRONIC DEVICES** described in Attachment A, and seize the items described in Attachment B.

23. Because this warrant seeks only permission to examine devices already in law enforcement's possession, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Richard Gaylord
Special Agent
Federal Bureau of Investigation

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 41(d)(3) this October 27, 2020.

_____
HONORABLE THOMAS M. DIGIROLAMO
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

1. This warrant applies to information associated with the following electronic devices:

    a. Xiaomi cell phone with clear case (blue) with SIM card; model M1904F3BG, SN: SIM Card: Lucky Mobile 89302610105004215532l;

    b. Apple iPad model A1673, FCC ID: BCGA1673, S/N: DMPT24NPH1MJ;

    c. TomTom navigation device GPS Unit Serial #: BL109A90577; and

    d. Samsung 128 EVO Plus Micro SD card MB-MC1286GVGOANFW-T,

(collectively, the "**TARGET ELECTRONIC DEVICES**"). The **TARGET ELECTRONIC DEVICES** are currently in law enforcement custody at a secure facility located in Frederick County, Maryland.

# ATTACHMENT B

1.   All records within the **TARGET ELECTRONIC DEVICES** described in Attachment A that relate to violations of 18 U.S.C. Section 871 (Threats against the President), 18 U.S.C. Section 875(c) (Interstate Threats), 18 U.S.C. Section 175 (Prohibitions with respect to Biological Weapons), and related offenses (hereinafter, the "Target Offenses"), including, but not limited to records and information related to:

   a. Any firearms, explosives or other weapons;

   b. The existence of stash and/or storage locations;

   c. Documents, writings, communications and records evidencing and reflecting a plan, motive, intent, or conspiracy to attack the U.S. government, U.S. government institutions and property, and law enforcement, including evidence of the advocacy of violence and terrorism, antigovernment or pro-militia extremism, including evidence of weapons, communications with persons and groups associated with terrorism and the advocacy of violence and destruction of property;

   d. Items evidencing and reflecting the existence of witnesses, bystanders, victims, accomplices, coconspirators;

   e. Items evidencing and reflecting the manufacturing, packaging, and transportation of weapons, explosives and incendiary substances;

   f. Items evidencing and reflecting manuals and procedures for conducting violent and destructive acts or communicating knowledge or instructions on how to create or produce chemical, biological, radiological, nuclear or explosive weapons;

    g. Records and information relating to social media through which a threat may be communicated;

    h. Items used in the acquisition and/or creation of chemical, biological, radiological, nuclear, or explosive weapons, including but not limited to biological materials, plant materials, and chemicals;

    i. Documents evidencing and reflecting the ordering, purchasing, storage, transportation, acquisition and sale of instrumentalities of violent and destructive acts, including United States currency used in such purchases and sales, buyer lists, seller lists, records of sales, log books, telephone/address books, bank and financial records, records relating to domestic and foreign travel such as tickets, passports, visas, credit card receipts, travel schedules, receipts and records, trucker log books and storage records, such as storage locker receipts and safety deposit box rental records;

    j. Information related to the transportation, ordering, purchase and use of instrumentalities of violence;

    k. Purchase records including but not limited to items used in the creation or acquisition of ricin;

    l. Video and/or audio footage indicating the travel taken by the subject of the investigation leading up to her arrest on September 20, 2020.

2. Any and all records related to the location of the user(s) of the devices.

3. For each of the Devices:

    a. Evidence of who used, owned, or controlled the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing

      history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b. evidence of software that would allow others to control the Devices, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c. evidence of the lack of such malicious software;

d. evidence of the attachment to the Devices of other storage devices or similar containers for electronic evidence;

e. evidence of counter forensic programs (and associated data) that are designed to eliminate data from the Devices;

f. evidence of the times the Devices were used;

g. passwords, encryption keys, and other access devices that may be necessary to access the Devices;

h. documentation and manuals that may be necessary to access the Devices or to conduct a forensic examination of the Devices;

i. contextual information necessary to understand the evidence described in this attachment.

4. With respect to the search of any of the items described above which are stored in the form of magnetic or electronic coding on computer media or on media capable of being read by a computer with the aid of computer-related equipment (including CDs, DVDs, thumb drives, flash drives, hard disk drives, or removable digital storage media, software or memory in any form), the search procedure may include the following techniques (the following is a non-exclusive list, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein, while permitting government examination of all the data necessary to determine whether that data falls within the items to be seized):

  a. surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for markings it contains and opening a drawer believed to contain pertinent files);

  b. "opening" or cursorily reading the first few "pages" of such files in order to determine their precise contents;

  c. "scanning" storage areas to discover and possible recover recently deleted files;

  d. "scanning" storage areas for deliberately hidden files; or

  e. performing key word searches or other search and retrieval searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation.

5. If after performing these procedures, the directories, files or storage areas do not reveal evidence of the specified criminal activity, the further search of that particular directory, file or storage area, shall cease.

With respect to the search of the information provided pursuant to this warrant, law enforcement personnel will make reasonable efforts to use methods and procedures that will locate and expose those categories of files, documents, communications, or other electronically stored information that are identified with particularity in the warrant while minimizing the review of information not within the list of items to be seized as set forth herein, to the extent reasonably practicable. If the government identifies any seized communications that may implicate the attorney-client privilege, law enforcement personnel will discontinue its review and take appropriate steps to segregate all potentially privileged information so as to protect it from substantive review. The investigative team will take no further steps regarding any review of information so segregated absent further order of the court. The investigative team may continue to review any information not segregated as potentially privileged.